IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GORDON EVERETTE BOOZE IV,  )
                           )
    Plaintiff,              )
                           )  Civil Action No.: 23-cv-2248-LKG
v.                         )
                           )  Dated: March 7, 2025
GERI JENIFER-SCRIBER, *et al.*, )
                           )
    Defendants.            )
                           )

## MEMORANDUM

Self-represented Plaintiff Gordon E. Booze IV brings this civil rights action against Sgt. Jenifer-Scriber,[1] CO II Hector, and Dr. Ali. ECF No. 1. The Amended Complaint is the operative pleading. ECF No. 6. Booze claims that when he was housed at the Baltimore Central Booking Intake Center ("BCBIC"), Defendants failed to provide safe living conditions causing him injury and then failed to provide timely and adequate medical care. *Id.* Booze is presently housed at Roxbury Correctional Institution ("RCI"). *Id.*

Defendant Dr. Ali filed a Motion to Dismiss or Alternatively for Summary Judgment. ECF No. 13. Booze filed a Response in Opposition to the Motion. ECF No. 27. Defendants Sgt. Jenifer-Scriber and Officer Hector ("Correctional Defendants") also filed a Motion to Dismiss or Alternatively for Summary Judgment. ECF No. 31. Booze filed a Response in Opposition to the Motion, and Defendants filed a Reply. ECF Nos. 34, 37. Thereafter, Booze filed a Motion to file a Second Amended Complaint, along with the proposed second amended complaint and supplement, which is pending at this time. ECF Nos. 38, 38-1, 39. Correctional Defendants oppose Booze's motion. ECF No. 41.

All motions are ripe for review and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

---

[1] Booze named Sergeant Jennifer as a Defendant in the Amended Complaint. ECF No. 6. Defendants have since represented that this Defendant's correct name is "Geri Jenifer-Scriber." ECF No. 31 at 1. The correct spelling of Defendant's name is used herein and the Clerk will be directed to revise the docket accordingly.

I.      **BACKGROUND**

Booze alleges that on December 26, 2022,[2] while housed at BCBIC in pretrial detention[3] he was outside of his cell "doing sanitation." ECF No. 6 at 4. When he returned to his cell to use the bathroom he slipped on the damp floor and broke his foot. *Id.* at 4-5. Officer Hector was notified immediately of the injury, yet "hesitated" calling the medical department. *Id.* at 5. Booze was not seen for medical treatment until after 11:30 p.m. that night and was not taken to the hospital until the next day after 6:00 p.m. *Id.* Booze was then sent to the Metropolitan Transition Center ("MTC") hospital where he stayed for approximately six months. *Id.*

Booze states that he complained to the tier officer, Jenifer-Scriber, on multiple days before the incident, that the floor in his cell was damp at times due to the "temp." condition. *Id.* She told Booze there was nothing she could do and he should file a complaint. *Id.* Booze then "tried very hard" to file a complaint but there was "never any complaint, ARPS, or grievance forms to use." *Id.* Booze "was always told that copies needed to be made, never receiving any." *Id.*

Booze alleges that Dr. Ali discharged him from the MTC hospital because he continued to complain about his foot. *Id.* Booze was sent back to BCBIC and then transferred out without "proper medical needs," such as special shoes to support his ankle and foot, and he is still without the shoes. *Id.* Presently Booze is housed at RCI and is still not getting adequate medical attention. *Id.* Booze states that he still has foot pain, something went "wrong" with his surgery that is affecting his back and head "all over again," and he may need additional foot surgery. *Id.*

With his Motion to Dismiss or Alternatively for Summary Judgment, ECF No. 13, 13-1, Dr. Ali provides a declaration and a copy of Booze's medical records. ECF Nos. 13-2-13-6. In his declaration, Dr. Ali states that he discharged Booze from the MTC infirmary back to BCBIC because he was medically stable, not because he complained about his foot. ECF No. 13-2 at ¶ 5.

---

[2] In the initial complaint, Booze states the date as December 26, 2022. ECF No. 1 at 4. In the Amended Complaint Booze appears to make an inadvertent error and states the date as December 26, 2023. ECF No. 6 at 4. The Court uses the date of December 26, 2022, which it finds to be the correct date, as documented by the subsequent filings of all parties and as referenced throughout this Opinion.

[3] In the initial complaint, Booze references events at BCBIC taking place in pretrial detention. ECF No. 1 at 3. Consistently, the Correctional Defendants assert in their Memorandum in Support of their Motion to Dismiss or Alternatively for Summary Judgment that Booze was in pretrial detention at BCBIC. ECF No. 33-1 at 8.

Booze's medical records document that on December 26, 2022 at 10:57 PM, he was seen by Dr. Michael Agonafir at BCBIC for an urgent provider visit. ECF No. 13-5 at 21-25. Booze complained of pain and swelling in his left ankle as a result of a fall that occurred 15 minutes earlier. *Id.* at 21. He also complained of bruising on his lower lip but denied loss of consciousness, head injury, syncope, dizziness, blurry vision, or headache. *Id.* Dr. Agonafir assessed an abrasion of the left ankle that was chronic and acute and wrote an order for Tylenol 3, cold compress, x-ray, and a CAM boot (given from stock). *Id.* at 23, 26. It was noted that a shift provider would perform a wet read of the x-ray in the morning. *Id.* at 23.

The next day, December 27, 2022 at 10:02 a.m., Booze saw Dr. Ashebir Chekol for an unscheduled provider visit. *Id.* at 16-20. The wet x-ray reading showed two acute fractures of the lower left ankle joint with one of the two fractures displaced. *Id.* at 16, 19. Booze complained of a pain level of 10 out of 10. *Id.* at 16. The left ankle joint was swollen and Booze was unable to do flexion, extension, or internal or external rotation of the joint. *Id.* at 18. Dr. Chekol ordered non-weightbearing of the left ankle joint, a CAM boot for the left foot, a wheelchair for ambulation, and continuing Tylenol #3, Robaxin, and muscle rub. *Id.* at 19. Booze was sent to the emergency room and was to have a follow up visit with the medical department on January 10, 2023. *Id.*

Booze was seen in the Mercy Hospital ER that day. ECF No. 13-6 at 4-14. X-rays were taken and confirmed an ankle fracture. *Id.* at 4. Booze was placed in a splint, given oxycodone, and was to follow-up with Foot and Ankle Surgery in two days. *Id.* Booze was admitted to the MTC infirmary for pain management after leaving the hospital. ECF No. 13-5 at 33-34.

The following day, December 28, 2022, Dr. Ali saw Booze in the MTC infirmary. *Id.* at 13-15. His ankle was splinted and ace wrapped and he was ambulating with crutches. *Id.* at 13. Dr. Ali noted that Booze required left ankle reconstructive surgery (ORIF) soon. *Id.* Dr. Ali ordered a number of medications including the pain medications acetaminophen codeine, ibuprofen, and muscle rub. *Id.* at 14. Notes indicate that Booze has a history of polysubstance abuse. *Id.* at 13. On that date, Ali submitted an urgent consultation request for ORIF surgery. *Id.* at 10-12.

One week later, on January 4, 2023, Booze was seen by orthopedic surgeon Dr. Krishnaswamy. ECF No. 13-6 at 2-3. Examination of the left ankle revealed tenderness with deformity and all movements were tender. *Id.* at 2. X-rays revealed trimalleolar fracture

subluxation of the left ankle. *Id.* Dr. Krishnaswamy noted the ankle was unstable and needed an outpatient ORIF procedure "very soon" with plate and screws laterally, medial malleolus screws, and syndesmotic screws. *Id.* at 2. Booze would need the syndesmotic screws removed at three months to allow full weightbearing. *Id.* No additional medications were prescribed on this date. *Id.*

On January 12, 2023, Dr. Krishnaswamy performed left ankle surgery. ECF No. 13-5 at 6-8; ECF No. 13-6 at 1. Dr. Krishnaswamy ordered no weightbearing and use of crutches, walker, and cane. ECF No. 13-6 at 1. On February 8, 2023, Booze saw Dr. Krishnaswamy for a follow-up appointment. *Id.* at 17. Booze's left ankle was feeling better after the surgery and Dr. Krishnaswamy removed the staples and noted the wounds were healing well. *Id.* The dressing and splint were reapplied. *Id.* Dr. Krishnaswamy ordered continued ambulation with crutches or a walker with non-weightbearing to the left leg. *Id.* He also directed that Booze receive the pain medication Tramadol 100 mg twice per day and to return in 3 weeks to remove the sutures. *Id.*

Less than one week later, on February 13, 2023, Dr. Ali saw Booze during infirmary rounds. ECF No. 13-5 at 2-5. He opened the half cast, examined the wounds, and noted the lateral ankle was healing well but the wound on the medial ankle looked infected. *Id.* at 2. Dr. Ali removed the sutures and ordered antibiotics. *Id.* Dr. Ali noted that although Booze was on multiple analgesics, he was "still complaining" that the pain medications were not strong enough. *Id.*; 13-2 at ¶ 12. Dr. Ali thought that Booze was "aiming to get Oxycodone" and he prescribed it for a seven day period. ECF No. 13-5 at 5. On February 13, 2023, Booze received crutches. ECF No. 13-6 at 18.

On February 23, 2023, Dr. Ali saw Booze on rounds. ECF No. 13-4 at 36-38. Dr. Ali opened the dressing and removed the remaining stitches and noted that the wound was healing very well, pain in the left ankle was "under control," and Booze continued to ambulate with crutches and/or a wheelchair *Id.* at 36-37. Booze continued to be prescribed medications to include the pain medication acetaminophen with codeine. *Id.* at 38.

On March 1, 2023, Booze saw Dr. Krishnaswamy and reported his left ankle was feeling "slightly better." ECF No. 13-5 at 38. Dr. Krishnaswamy recommended continued dressing changes, physical therapy to the ankle and foot for 4-6 weeks, new x-rays of the left ankle, partial weightbearing of the left leg with crutches, a follow up visit in four weeks, and removal of the syndesmotic screws and revising them to shorter screws in 6-8 weeks. *Id.*

Medical records document that on April 5, 2023, Booze was not taken out for a scheduled appointment with Dr. Krishnaswamy because a wheelchair van was unavailable but that the visit would be rescheduled as soon as possible. ECF No. 13-4 at 33. By telephone on April 6, 2023, Dr. Krishnaswamy said that Booze needed to be on full weight bearing status with crutch support. *Id.* Dr. Ali saw Booze on April 7, 2023, and Booze reported he had some pain on the left ankle medial aspect, where the hardware predominance was gradually improving, and noted that Booze was on appropriate analgesics. *Id.* Booze was still on partial weightbearing status and was using crutches and a wheelchair. *Id.* Dr. Ali noted that Booze was reluctant to comply with the plan for full weight bearing and surmised that this was probably justification for his pain medicine requirement. *Id.*

On April 14, 2023, Booze saw Dr. Krishnaswamy for revision of the syndesmotic screws. ECF No. 13-5 at 36. Records note that he was given one dose of oxycodone and directed to see his doctor in 14 days, and to bear weight "as tolerated." *Id.* On April 15, 2023, Booze saw Dr. Jocelyn El-Sayed on infirmary rounds. ECF No. 13-4 at 29-31. Booze was continued on pain medications to include acetaminophen with codeine. *Id.* at 31.

On May 1, 2023, Booze saw Dr. Krishnaswamy for a follow-up visit and reported that his left ankle was feeling better and it was noted that the wound was healing well. ECF No. 13-5 at 35. Krishnaswamy removed the sutures and a new dressing and ace bandage were applied. *Id.* Dr. Krishnaswamy recommended daily dressing changes, physical therapy to the left ankle 3 times per week for 6 weeks, and that Booze should return in six weeks for a follow-up visit with x-rays of the left ankle taken one week prior to the visit. *Id.*

On May 4, 2023, Booze was evaluated for physical therapy. ECF No. 13-6 at 19-20. He had residual left ankle pain, stiffness, weakness, and limited weightbearing tolerance. *Id.* at 20. It was noted that he uses a wheelchair for mobility when leaving his dorm room. *Id.* The therapist concluded that therapy would be beneficial for pain management, range of motion, strengthening, and gait training, and recommended 15 visits. *Id.*

On May 9, 2023, Dr. Ali saw Booze during rounds and noted the left ankle was a bit swollen, blue hue discolored, osteitis (inflammation of the bone), and was tender to palpation. ECF No. 13-4 at 26-27; ECF No. 13-2 at ¶ 19. Booze was ambulating with crutches and wheelchair as requested. ECF 13-4 at 26. Dr. Ali prescribed a short course of a nonsteroid anti-

inflammatory drug. *Id.* Booze was continued on pain medications to include acetaminophen with codeine. *Id.* at 27.

On May 12, 2023, Dr. Ali saw Booze during rounds. *Id.* at 23-26. Booze still had left ankle swelling with blue hue discoloration but his slight tenderness on palpitation was markedly improved. *Id.* at 23. He was ambulating with crutches and a wheelchair but was on full weightbearing status, and was clinically stable and responding to therapy very well. *Id.* at 23, 26.

On May 17, 2023, Dr. Ali saw Booze during rounds. *Id.* at 20-22. He still had left ankle swelling, with blue hue discoloration, however, the slight tenderness on palpation was resolved. *Id.* at 20. Booze continued to use crutches and a wheelchair although he was told to be full weightbearing as tolerated and was receiving physical therapy. *Id.* His surgical wounds were healed, but complained of dull foot pain which Dr. Ali noted "was most likely justification" for opioid derivative analgesics. *Id.* at 20. On May 18, 2023, Dr. Ali saw Booze and noted that he still had left ankle swelling with blue hue discoloration, and discussed with the physical therapist to make Booze use a cane and ambulate, although he should not need any assistive devices. *Id.* at 17; ECF No. 13-2 at ¶ 22.

On May 30, 2023, Booze was reevaluated for physical therapy. ECF No. 13-6 at 15-16. He had tenderness localized to the dorsal surface of the foot, medial and lateral malleolus. *Id.* at 15. Booze was using a cane 75 feet x 3 (with supervision) and with an emphasis on proper foot sequencing. *Id.* at 16. The therapist noted he was making "charitable" progress despite complaining of continued left ankle pain, which had eased slightly. *Id.* Left ankle range of motion had improved with some residual stiffness remaining. *Id.* Gross ankle strength had improved and Booze was able to place fifty percent of his weight on his left ankle, an increase from fifteen percent initially. *Id.* The therapist recommended Booze receive an additional ten physical therapy visits. *Id.*

On June 9, 2023, Dr. Ali saw Booze during infirmary rounds. ECF No. 13-4 at 14-16. His left ankle was still swollen, warm to touch, tender on palpation, with some effusion (fluid) signs. Dr. Ali suspected left ankle effusive arthritis and wanted to rule out a hardware infection. ECF No. 13-2 at ¶ 24; ECF No. 13-4 at 14. Dr. Ali recommended sending Booze out to the University of Maryland Medical System emergency room for further workup and management, but Booze did not want to go. *Id.* Dr. Ali noted that Booze was still reluctant to bear weight

6

over five months after the injury. *Id.* Dr. Ali prescribed the antibiotic Levaquin, low dose Lasix for edema, Tylenol #3 (with codeine) for pain, and ordered labs. ECF No. 13-2 at ¶ 24; ECF No. 13-4 at 15-16.

On June 13, 2023, Booze was seen by Dr. Krishnaswamy and he reported that the left ankle was feeling better and physical therapy was helping but he was still having pain. ECF No. 13-5 at 32. Exam of the left ankle revealed slight tenderness over the plate and screws medially and laterally with slight swelling, and range of motion increasing in the left ankle. *Id.* Dr. Krishnaswamy recommended continuing physical therapy for 6 weeks, Motrin 800 mg daily, wearing two socks, and repeat x-rays in two to three weeks before returning in 6 weeks. *Id.*

On June 20, 2023, Dr. Ali saw Booze in the infirmary for discharge. ECF No. 13-2 at ¶ 26; ECF No. 13-4 at 10-13. Dr. Ali noted that on June 13, 2023, Dr. Krishnaswamy's assessment and recommendations from June 13, 2023. ECF No. 13-4 at 13. Dr. Ali noted no signs of infection, that the left ankle swelling was markedly regressed, nontender with no effusion signs, and Booze had responded to treatment. *Id.* Booze was wearing a left leg CAM boot, ambulated with a cane, and was on full weightbearing status as tolerated over the sixth month of left ankle injury. *Id.* Physical therapy was "on progress" and additional physical therapy might be requested by the orthopedist. *Id.* Booze had no other acute issues, was clinically stable, and would be discharged to his cell with medications and discharge instructions. *Id.* Booze's prescription for acetaminophen with codeine was stopped on this date with remaining prescriptions continued to include Amitriptyline, Meloxicam, Methocarbamol and Neurontin for pain. ECF No. 13-2 at ¶ 26; ECF No. 13-4 at 10. Dr. Ali's discharge instructions included that Booze receive a bottom bunk for one year, CAM boot and cane for ambulation, left ankle x-ray in two to three weeks, consult for additional physical therapy, and follow up with Dr. Krishnaswamy in six weeks. ECF No. 13-4 at 13. Dr. Ali states that he had no further involvement in Booze's care after he discharged him from the MTC infirmary. ECF No. 13-2 at ¶ 26.

On June 20, 2023, Booze arrived at BCBIC from MTC in stable condition. ECF No. 13-4 at 2-9. Booze was seen by Dr. Abiodun, requested Tylenol #3, and was denied the request with Dr. Abiodun advising that narcotics are not indicated for pain management this far out from surgery. ECF No. 13-3 at 31. Dr. Abiodun noted Booze's decreased range of motion but no left ankle joint instability or leg edema. *Id.* at 34. Pain medications were ordered to include Extra

Strength Tylenol, Meloxicam, Biofreeze, Baclofen, Neurontin, and Elavil. *Id.* at 35; ECF No. 13-4 at 1; ECF No. 13-2 at ¶ 27. Dr. Abiodun completed a Disability Assessment noting that Booze needed crutches and a CAM boot, and Booze signed a receipt for crutches. ECF No. 13-5 at 28-29.

On June 27, 2023, Booze was reevaluated for physical therapy. ECF No. 13-5 at 30-31. It was noted that Booze had made some functional improvement with left ankle weightbearing, but persistent pain and swelling had hindered his overall progress. *Id.* at 30. Booze stated that the orthopedic surgeon said it can take six months to a year for his ankle to fully heal and it is healing slowly but well. *Id.* Booze also reported that the surgeon said he may have to take out the "plate" due to prolonged swelling and pain. *Id.* Booze reported using one crutch and the walking boot and he could walk with or without the boot while not using the crutch for 5-10 minutes before the pain shoots from his ankle up to his knee. *Id.* He also stated he was putting 75% of his weight on the left ankle, compared to 50% on May 30, 2023. *Id.* The therapist noted Booze could ambulate during physical therapy session with a cane 75 feet x 4 (with supervision). *Id.* The physical therapist recommended ten additional visits to address persistent left ankle pain, swelling, stiffness, weakness, and gait deficit. *Id.*

On June 28, 2023, Booze saw LPN Dionna Green for an unscheduled sick call. ECF No. 13-3 at 29-30. Booze stated that he did not need to use his crutches every day. *Id.* at 30. Booze complained about his discharge from MTC and the ineffectiveness of his pain medication and was instructed to fill out a sick call slip so the provider could address his pain management concerns. *Id.* On June 29, 2023, the Booze saw Physician Assistant Alemu on sick call complaining of chronic left ankle and foot pain and asking for stronger pain medication. *Id.* at 24-28. Alemu ordered muscle rub for the left ankle and noted that Extra Strength Tylenol, Meloxicam, Biofreeze, Baclofen, and Neurontin pain medications were already active. *Id.* at 27.

On July 27, 2023, Booze was transferred from BCBIC to RCI. *Id.* at 14-23. On August 17, 2023, Booze was seen for a scheduled provider visit and he reported left ankle pain. *Id.* at 10-13. Booze stated that he only had soft slip-on shoes, wanted a decent pair of shoes, and denied any other acute concerns. *Id.* at 10. On examination, the left ankle had a well-healed scar over the lateral malleolus with no signs of infection or tenderness to palpation. *Id.* at 12. Dr. Smith spoke with the Assistant Director of Nursing Andrea Trowbridge, who contacted security about procuring shoes for Booze. *Id.* Booze was assured the shoes had been ordered. *Id.*

8

On October 13, 2023, Booze saw RN Brooke Brining in sick call complaining of left ankle pain and swelling. *Id.* at 7-9. Brining noted a slight left side limp during ambulation, and that the left ankle was inflamed, tender to touch, and range of motion was guarded. *Id.* at 8. An ace bandage was applied for compression and Booze confirmed receipt. *Id.*; ECF No. 13-5 at 27.

On November 6, 2023, Booze saw Dr. Smith for chronic care and reported that he still had not received shoes with better cushioning. ECF No. 13-3 at 2-6. Dr. Smith noted that when assessing Booze's upper shin for edema, which he was found not to have, Booze cried out in pain when he lightly touched his shin approximately 12-15 inches away from his surgical site causing Dr. Smith to note some concern for malingering. *Id.* at 4. There was no indication for long term use of muscle relaxers, and Baclofen was not renewed. *Id.* Dr. Smith did renew Elavil, acetaminophen, and Mobic. *Id.*

## II.   STANDARD OF REVIEW

### A. Federal Rule 12(b)(6)

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements

9

"and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

B. Conversion

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Booze that he had the right to respond to Defendants' Motions, that the Motions could be construed as motions for summary judgment, and that if he did not file a timely and adequate response, the Court could rule in Defendants' favor. ECF Nos. 14, 32. Moreover, Defendants' Motions, which identify summary judgment as possible relief, provided sufficient notice for Booze to have a reasonable opportunity to present relevant evidence in

10

support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Booze filed an opposition to both of Defendants' Motions. ECF Nos. 27, 34. Thus, the Court is satisfied that Booze has been advised that Defendants' Motions could be treated as motions for summary judgment and that he has been given a reasonable opportunity to present materials in response to the Motions. The Court will resolve the Motions under Rule 56 where appropriate.

C. Federal Rule 56

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

III. DISCUSSION

A. Correctional Defendants

The Correctional Defendants assert that the Amended Complaint should be dismissed because Hector has failed to exhaust his administrative remedies, failed to state a claim

11

pertaining to his "slip and fall," and failed to state a claim for delay in medical care. ECF No. 31-1.

### 1. Exhaustion

Defendants Jenifer-Scriber and Hector assert that Booze failed to exhaust administrative remedies prior to filing the Complaint and the Amended Complaint should be dismissed on this ground. ECF No. 31-1 at 5-7. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003) (finding that "the exhaustion provision" of the PLRA "plainly extends" to suits regarding prison conditions). Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . . . ."); *Ross v. Blake*, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust"). Consequently, if Booze has not properly presented his claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 578 U.S. at 639.

Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee. *Jones*, 549 U.S. at 215–16. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See id.*; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines."

*Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore*, 517 F.3d at 725. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

Correctional Defendants do not provide any information describing the grievance procedure in place at BCBIC, including what steps Booze should have taken and failed to take to exhaust his administrative remedies, and the applicable time frames for doing so. They rely instead on information provided by Booze in the Amended Complaint stating that as to the damp floor, he "tried very hard" to file a complaint but there was "never any complaint, ARPS, or grievance forms to use. I was always told that copies needed to be made, never receiving any." ECF No. 6 at 4. They argue that Booze's allegations do not show that "any defendant or DPSCS employee" prevented him from filing a complaint or that the grievance process was unavailable to him and that this is legally insufficient to excuse exhaustion. ECF 31-1 at 6. Correctional Defendants also assert that Booze did not address whether he grieved Defendant Hector's alleged delay in taking him to medical treatment, thereby failing to exhaust this claim also. *Id.* at 6-7.

The Court concludes otherwise. It is not Booze's burden to plead exhaustion, but the Correctional Defendants' burden to show he has not exhausted because they raised this as an affirmative defense. Booze asserts that he was thwarted from using the grievance system due to his inability to obtain grievance forms and the Correctional Defendants offer no evidence to contradict Booze. ECF No. 6 at 4. The record, taken in the light most favorable to Booze, indicates that the administrative remedy was not available to him, because "through no fault of his own, [he] was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Defendants' motion to dismiss is denied on the ground of failure to exhaust.

### 2. Conditions

Defendant Jenifer-Scriber asserts that Booze fails to state a constitutional claim pertaining to slipping on the damp floor and injuring himself and this claim should be dismissed. ECF No. 31-1 at 7. She argues that Booze has alleged a negligence claim which is not actionable under 42 U.S.C. § 1983. *Id.*

Booze was a pretrial detainee at the time of his fall and therefore the Fourteenth Amendment applies to his conditions of confinement claim. *See, e.g., Short v. Hartman*, 87 F.4th 593, 604–05 (4th Cir. 2023). To state a Fourteenth Amendment claim based on unconstitutional conditions of confinement, a pretrial detainee must allege facts sufficient to show that the action taken was not "rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." *Short*, 87 F.4th at 611 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015)). Further, "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . objectively unreasonable" in that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citations omitted).

Construing the allegations in the light most favorable to Booze, he has plausibly alleged a Fourteenth Amendment claim against Jenifer-Scriber. Booze has alleged that for "multiple days before" he slipped on the wet floor he made "multiple complaints" to his tier officer Jenifer-Scriber about the condition in his cell that was making his floor damp. ECF No. 6 at 4. Jenifer-Scriber responded by stating "there was nothing she could do" and repeatedly took no action. *Id.* Eventually Booze slipped on the wet floor and was seriously injured. *Id.* at 4-5. Booze has adequately alleged a Fourteenth Amendment violation.

Jenifer-Scriber's motion to dismiss for failure to state a claim is denied.

### 3. Delay in Medical Treatment

Defendant Hector asserts that Booze has failed to state a claim for delay in the provision of medical care and this claim should be dismissed. ECF No. 31-1 at 8-9. Hector argues that Booze does not present any evidence that Hector's call was actually delayed, but rather makes the assumption based on the timing of the medical care provided. *Id.* at 8.

In his Amended Complaint, Booze states that Hector was "immediately notified" of his injury and "deliberately hesitated" calling medical to assist him which in turn caused Booze to not be seen by medical until after 11:30 p.m. that night. ECF No. 6 at 5. In contrast, Hector cites to certified medical records that document Booze was seen by the medical department "15 minutes" after Booze was injured. ECF No. 31-1 at 9; ECF No. 13-3 at 1; 13-5 at 21. Although Booze responds to Defendant Hector's motion by stating that he was injured between 11 a.m. and 12 noon that day and for almost 12 hours he had to lay on his bed in "agonizing pain," his response is unverified, and he does not address the inconsistency with the medical record that

14

was provided. ECF No. 34 at 1. Booze also does not provide any additional information to shed light on his conclusory statement that he knows that Hector delayed contacting medical and that this was the cause of the delay in treatment.

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like respond to the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Kipps v. Ewell*, 53 F.2d 564, 566 (4th Cir. 1976). Booze was notified that he had the right to respond to Defendants' Motions and was specifically advised that his response should include affidavits (statements made under oath); declarations (statements made subject to the penalty of perjury under 28 U.S.C. § 1746); or other materials that contest the affidavits, declarations, or records filed by the defendant(s), which are needed to show the Court that a genuine issue of material fact remains to be determined and the case should proceed to trial or evidentiary hearing. ECF Nos. 14, 32. Booze has not provided a verified response to the motion and has therefore not properly countered Hector's motion for summary judgment and the verified medical records provided.

The Court concludes there is no genuine issue of a material fact and summary judgment pertaining to the delay in medical treatment will be granted to Hector.

B. Dr. Ali

Dr. Ali asserts that Booze has failed to state a claim for deficient medical care under the Eighth Amendment to the constitution and the claim against him should be dismissed, or in the alternative, that there are no material facts in dispute and he is entitled to summary judgment in his favor. ECF No. 13-1. As discussed previously, Booze was a pretrial detainee when he was under the care of Dr. Ali and this claim falls under the Fourteenth, not Eighth Amendment.

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that "the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care" to pretrial detainees "who require it") (citation omitted)). "To state a claim of deliberate indifference to a medical need . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have

15

known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short*, 87 F.4th at 611. A pretrial detainee does not have "to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.*

Assessing Booze's claim under the less demanding objective Fourteenth Amendment standard, the Court finds that Dr. Ali did not violate his right to medical care.[4] Booze's entire allegations against Dr. Ali in his Amended Complaint are that he was discharged from the MTC hospital by Dr. Ali because of his continuing complaints about his ankle.[5] ECF No. 6 at 5.

Booze has not succeeded in showing there is a genuine issue of a material fact that would preclude summary judgment in favor of Dr. Ali. The medical record and declaration of Dr. Ali documents the extensive medical care he provided to Booze for the more the more than five months he was in his care, including timely referral to a surgeon, with necessarily follow up visits, referral to a physical therapist for ongoing care and treatment, and extensive pain management by way of medication and referral to physical therapy. Dr. Ali continually assessed and prescribed multiple pain medications for Booze, who has a history of polysubstance abuse. Additionally, when Booze was transferred back to BCBIC, a second physician denied a prescription for Tylenol #3, which Dr. Ali had provided to Booze up until the time of his discharge, noting that narcotics are not indicated for pain management that far out from surgery. ECF No. 13-3 at 31. The record simply does not show any gaps or delays in treatment or failure to provide necessary medical care, or that Dr. Ali discharged Booze prematurely from MTC.

In reviewing the record most favorably to Booze, no rational juror could conclude that Dr. Ali rendered constitutionally inadequate medical care. On this record, summary judgment must be granted in Dr. Ali's favor.

---

[4] Even if Booze was not a pretrial detainee, under the more demanding Eighth Amendment standard requiring subjective proof that the medical staff were aware of the need for medical attention but failed to either provide it or ensure it was available, Booze's claim would most certainly fail. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

[5] In response to Dr. Ali's motion, Booze adds in his unverified statement that he "feels like he should have been prescribed stronger medication." ECF No. 27 at 2. Further, Booze believes that due to his requests to Dr. Ali for stronger pain medication, Dr. Ali transferred him out of the MTC infirmary to BCBIC without proper medical "preparation." *Id.* at 3.

### IV.   MOTION TO FILE A SECOND AMENDED COMPLAINT

Booze filed a motion to file a second amended complaint, along with the proposed second amended complaint and supplement. ECF Nos. 38, 38-1, 39. Correctional Defendants oppose Booze's motion to file a second amended complaint stating that Booze fails to identify any new factual assertions or legal theories against the Correctional Defendants. ECF No. 41.

The proposed second amended complaint is substantively the same as the First Amended Complaint, except that it adds YesCare Medical as a Defendant. As to YesCare, Booze's complaints relate solely to the lack of medical care he alleges he is receiving at RCI. ECF No. 38-1 at 6. He states that due to "YesCare Medical Staff" he has still not received appropriate shoes, his walking cane was confiscated, he was not sent to his surgeon for further care, has not seen a therapist , and continues to have pain from his medical condition. *Id.*

Booze's general allegations about "YesCare Medical Staff" are inadequate to state a claim against YesCare itself or any individuals employed by YesCare. Section 1983 extends liability only to *persons* whose acts or omissions violate the plaintiff's constitutional or statutory rights. 42 U.S.C. § 1983 ("[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights[.]"). YesCare itself is not a proper party unless there are allegations of a custom or policy of constitutional violations by YesCare itself. *Austin v. Paramount Parks*, 195 F.3d 715, 727-28 (4th Cir. 1999). Plaintiff has not provided facts alleging there is a custom or policy by Corizon to deny medical treatment nor has he named individuals employed by YesCare that have failed to provide him with adequate medical care.

Federal Rule of Civil Procedure 15 directs that the Court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). But where the proposed amended claim fails as a matter of law, the Court may deny an amendment as futile. *See Katyle v. Penn Nat. Gaming, Inc.* 637 F.3d 462, 471 (4th Cir. 2011), citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008).

Booze's proposed second amended complaint fails to state any additional claims for relief, and the Motion to file a Second Amended Complaint will be denied as futile.

### V.   CONCLUSION

For the foregoing reasons, Dr. Ali's Motion to Dismiss or for Summary Judgment, ECF No. 31, is granted and the Amended Complaint against him will be dismissed. The Motion to

Dismiss or for Summary Judgment filed by the Correctional Defendants will be granted in part and denied in part. The motion for summary judgement as to Defendant Hector will be granted and he will be dismissed from this action. The motion to dismiss as to Jenifer-Scriber will be denied and she will be directed to answer the Amended Complaint. Further, Booze's motion to file a second amended complaint, ECF No. 38, will be denied without prejudice.

A separate Order follows.

March 7, 2025
Date

LYDIA K. GRIGGSBY
United States District Judge